Mr. Richter. Good morning, Your Honor. May it please the Court, my name is Casey Richter. I'll be representing Drygel this morning. At this time, I'd like to reserve five minutes for rebuttal. Thank you. Your Honor, we would contend that this is a relatively simple case at its core. In Warner-Lambert, this case determined that oral perfumes are properly classified, this Court determined that oral perfumes are properly classifiable within Heading 3306 of the Harmonized Tariff Schedule, providing for products of oral hygiene. It's undisputed in this case that magic strips, the product in question, are properly described as oral perfumes. Therefore, magic strips are properly classifiable within Heading 3306, and the CIT erred in denying Drygel's motion for summary judgment on those grounds. Was that really the holding of Warner-Lambert? We would contend that, yes, it was part of the holding of Warner-Lambert, Your Honor. In Warner-Lambert, the Court specifically looked at certs powerful breath mints. In determining that certs powerful breath mints were products of oral hygiene, like magic strips, the Court cited several qualities that were pertinent to the classification. Among them were the fact that certs were a breath freshener, the fact that... So it's a statement, it's not necessarily the holding of the case. Maybe it was an observation made by the Court as part of its reasoning, but the holding would be a little different, wouldn't it? I would grant that, Your Honor. The holding was that certs powerful breath mints were properly classifiable within Heading 3306. The way the Court reached that determination was by examining the qualities that make certs powerful breath mints properly classifiable within Heading 3306. Among those are the fact that it's a breath freshener, the fact that it contains flavors that mask oral malodors, the fact that oral perfumes are encompassed within the heading by the explanatory notes, the fact that an FDA monograph... Of course, Mr. Rigg, the explanatory notes are not binding. That is true, Your Honor. However, the explanatory notes provide the Court with guidance as to the proper interpretation of the heading. I guess your argument is that our reference in the Warner-Lambert decision to the explanatory notes, you would say that it's kind of a... At least for purpose of this case, we sort of... Of that case, we sort of endorsed the latch onto it. That would be our contention, Your Honor, yes. Warner-Lambert also made reference to cleansing action, purging and so on and so forth. Do you satisfy that part of the reasoning of Warner-Lambert? We argue that we do, Your Honor. However, we also contend that those qualities of search-powerful graphemes cited by the Court are other factors that would indicate that it is classifiable within Heading 3306, but are not requirements for classification under Heading 3306. And that, we contend, Your Honor, was the CIT's principal error in determining that now cleansing and purging or absorption and breakdown are necessary functions. In a paragraph only slightly before... If we agreed with you, would that make every chewing gum classifiable under this section? No, Your Honor, it would not, because chewing gums and candies are expressly provided for elsewhere in the Harmonized Terrorist Control. But they kind of perform a perfuming function? That is true, Your Honor, but again, they would not be described in a separate section. And certain chewing gums may well be classifiable under this heading, but that's not before the Court. Determining the full scope of the heading need not concern you today. What concerns you is, with all due respect, the classification of magic strips. Now, not much sooner... In a couple paragraphs before stating that qualities that Customs had overlooked in the classification of search-probable breath mints included absorption and breakdown and purging and cleansing, the Court also stated that products classifiable within Heading 3306 need not have therapeutic or prophylactic values, and that it would be a mistake to equate health with hygiene. We contended that requiring cleansing and purging and breakdown is the same as requiring therapy and prophylactics and health. That what the Court now requires, what the CIT determined that the heading requires, is the same as before, a cure for oral malodors. And that's not what the heading requires, and that's not what the Court's holding Warren Lambert requires. Mr. Rector, let me just ask you to understand the posture of the case. The Court of International Trade held, as I understand it, that the magic strips could not be classified in, was it 3306? Correct. But had to be in the other classification. And there was also a determination that you could, that you argued that you were, as an alternative argument, that you met the hygienic qualities, right? That's correct, Your Honor. We contended that A, magic strips contain menthol and sucrose palmitate, which are shown and proven to be powerful antimicrobial products. Also, Your Honor, if absorption, if breakdown and purging, excuse me, purging and cleansing are requirements, the government's own witness stated that anything placed in the mouth creates increased salivation. Therefore, magic strips would meet the higher standard that the CIT has set. But the problem is you wouldn't have enough evidence on summary judgment to satisfy the standard of cleansing, right? No, we believe we would, Your Honor. Well, but that's at least a question of fact, right? That is at least a question of fact and would require a trial, Your Honor. So you wouldn't have any summary judgment sufficiency either? That was the major, the primary point. Go ahead. No, we would, Your Honor. We would survive summary judgment on the grounds that oral perfumes are properly classifiable under heading 3306. You don't say, you don't mean survive summary judgment, you mean win on summary judgment. Correct, correct. We would contend that it would be proper to enter summary judgment on our behalf on the grounds that oral perfumes are properly classifiable within heading 3306. But if we're talking about cleansing as a requirement, you do not have enough for summary judgment. I think that was the point we were discussing. We don't concede that, Your Honor, but we would contend that at the very minimum a trial would be required. The summary judgment in the government's favor was inappropriate. And the principal reason why summary judgment was inappropriate for the government was that the trial court did not determine that we lacked evidence. The trial court determined that our evidence was not to be trusted, that because it was, in the trial court's terms, unconvincing and self-serving, that it wasn't to be given full credit. Now, we contend, and the case law is quite clear, that those are judgments that are reserved for trial. Determining whose evidence is more credible, whose witnesses are more credible, are issues that aren't appropriate for summary judgment. This Court has held repeatedly that that is true. And in this particular case, IU Lead Systems, the Court held that classifying or qualifying evidence as being self-serving was an insufficient grounds for granting summary judgment on behalf of one or the other of the parties. Additionally, Your Honor, the affidavit evidence given in support of the contention that magic strips contain bacteria-defeating, bacteria-killing products was supported by published materials. Now, the government discounts those published materials, but rebutts them with internet sources of its own and no greater or more valuable evidence than that presented by Dry Joe. And to the extent that they question the credibility of the principal witness for Dry Joe, CIT law holds that, or CIT precedent states, that the president or the principals of importers are presumed to be knowledgeable about their products, and they are presumed to know what goes into them, what they're used for, what their functions are. And that is the case here. We have the president of Dry Joe testifying. You dismiss the district court's judgment about your evidence, but why isn't it appropriate on summary judgment to reach the conclusion that statements are simply too conclusory, simply too self-serving, to rise to the standard of creating an issue of fact? Your Honor, I contend that self-serving... In other words, he certainly can evaluate the evidence. He can't dismiss a question of fact, but he can evaluate it to decide if there's a sufficient basis for summary judgment, right? There is an evaluation that is required, but the evaluation is not who is more credible, but rather, is there sufficient evidence to create a triable issue? Well, but his language was whether it's self-serving, which is kind of a way of saying it doesn't rise to the level of summary judgment, right? I respectfully disagree, Your Honor. Self-serving indicates that it is not to be believed because there's a motive to giving it. If that were true, a paid witness wouldn't be believable. So if he used the word conclusory, you wouldn't have this argument? I don't know that we wouldn't have it. We would continue to argue that our statements were not conclusory and that they were backed by facts. However, he did not say conclusory. He said self-serving, and... It's a bit of a... I always get a little disturbed when we're fighting over a single word and whether or not a district judge is doing the proper thing because he uses one word or another. Actually, I'm into my rebuttal time, so if I can answer this question in reserve of breath... We'll make sure you have plenty of rebuttal time. Your Honor, that would be... we would have a different... we'd be having a different discussion if the court didn't have a case that said self... that dismissing evidence as self-serving is insufficient. All right. Thank you very much. Ms. Williams? May it please the Court. We agree that this case is very simple, and there are two basic issues in it. The first issue is, what does hygiene mean? In Warner-Lambert, the court explored that and said four things could make up hygiene, which is cleanliness, masking something in your mouth, in other words, flavoring it, purging, which is... It would likely mask, and that's the only thing it will do. It won't purge, which is when you physically remove... We're talking about oral hygiene. That's a pretty broad category, isn't it? That is correct, but as the dictionary's definitions define it, it has to reflect cleanliness. It can't simply mean spraying something to make it smell better because that's not clean. It's not doing anything. As Your Honor recognized, mint candies, gum, tobacco, cigarettes that have menthol in them would all perform the same thing, and masking a flavor is not enough unto itself to make something a dental... an oral or dental hygiene product. Excuse me, what do we make of the reference... Let me ask you this one. One of the main arguments that the other side makes is that they are an oral perfume, magic strips are an oral perfume, and that in the Warner-Lambert decision there, we basically looked to the explanatory note and said, this is an oral perfume. Let me ask you, would you agree that magic strips are oral perfumes, leaving aside for the moment the force of being an oral perfume for purposes of the classification? No, we agree that magic strips can mask flavor, can scent your breath. The next question is, is that an oral perfume, which leads to a traditional analysis of what is oral perfume. First of all, as mentioned before, explanatory notes are not binding, and they cannot expand the scope of a heading. Our heading here is still oral dental hygiene products, which means oral perfumes must be one of them. So let's assume for the sake of this argument that the explanatory notes are relevant, that they govern, and that they tell us what is an oral or high... Excuse me, oral or dental hygiene product. There's nothing in the legislative history for the explanatory notes to tell us what oral perfume means. It's not a term used in the United States, so we don't know what it means. So you're saying that if one were to take the position that if you're an oral perfume, you come within 3306, you'd say there would still have to be here some kind of a proceeding to determine whether the magic strips do constitute an oral perfume. We need to decide what oral perfume is, and then once we've defined that, do they fall within it. Is that hard to do, though? I mean, isn't it kind of easy to determine whether something is an oral perfume? Wouldn't it be anything that made your breath smell better? No, that's the point. That would be true, except explanatory notes cannot expand a tariff heading. So something that simply makes your breath smell better is too broad of a way to define oral perfume, because they still must be, and they most importantly must be, an oral or dental hygiene product. And what do you say hygiene means? Cleanliness, and that's what the court reflected in Warner-Lambert. It said there are four ways to, it said it's the application of scientific knowledge to preservation of health and prevent the spread of disease, cleanliness. It isn't necessarily killing germs. That's really what the bottom line of Warner-Lambert is. It doesn't necessarily have to physically kill bacteria, but it's got to have some sort of goal towards cleanliness. And if you take out cleanliness from the definition of oral hygiene product, it literally covers anything. And the notes expressly include oral perfumes, right? It doesn't expressly. The explanatory notes, which are guidance, say that it covers oral perfumes, but there is no definition of what is an oral perfume. An oral perfume is probably something that scents your mouth, that also has a cleanliness function, and that's why it's placed when it says mouthwashes and oral perfumes. It's probably something akin to a mouthwash. Well, what makes the magistrate different from a cert power mint? Retsin. And that's the heart of this case, which gets into the second issue. Retsin, there is documented evidence that that drug, that chemical, reacted with sulfates in your mouth and negated them. It actually physically did something. In this case, we do not have something like that, and the plaintiff does not even suggest that there is. What are the key ingredients in the magic strips? I remember reading it, but I forget right now. I know there's some menthol. There's a debate as to how much menthol, but there's some. What else is in there? Dry gel says there's three things in magic strips that are important. Menthol, citric acid, and sucrose palmier. Those are the three things. And aren't they going to stimulate the purging action, which we discussed in Warner-Lambert as being sufficient? The dry gel says— You're going to have salivation, and that's going to purge. Dry gel really tailors that argument to citric acid. In other words, saying the citric acid in the magic strips causes purging. The problem with that argument are, one, purging alone cannot be enough, and no case has ever found that it is, because anything that's sour, sour candies, can cause you to purge. Anything you put in your mouth can do that. So that's not enough. Point two— But the candies go under a different heading, right? Who knows? Then you get into an analysis within the tariff of which one's more specific, if it's covered by two provisions. And candy, which has sugar, which rots your teeth, would arguably then be classifiable within a heading for oral dental hygiene, simply because it causes you to salivate. The tariff could never have been intended to mean that. So there's citric acid— It just came back to the perfume issue, though, because we did seem to give some attention to that in the Warner-Lambert decision. And you say, if all you have to be is an oral perfume, wouldn't the test be, okay, what is the definition of a perfume? How would you define the term perfume? Just standing alone. Just me? An oral perfume, all I can define it is as it appears in the explanatory notes affecting this tariff heading. It is something probably that perfumes your mouth while doing some sort of cleanliness action, because it cannot expand the scope of this heading. But why would just a perfume itself have to do any cleansing? I'm just thinking of the term perfume. You can come in from vigorous exercise and not take a shower and put some perfume on, and it might mask the body odor, but it's not going to have any cleansing effect. But the tariff requires it. The heading of the tariff is oral and dental hygiene. Hygiene must mean something. It cannot simply mean to make something smell better, because that's not hygiene. This Court's told us hygiene when it looked to the definition of that term. But Warner-Lambert seemed to say any cleansing effect would be enough. Yes. And it seems that Warner-Lambert has created the problem that it could be a sour mint, because it does cleanse by purging. Warner-Lambert did not address the circumstances we have here looking at the term oral perfume alone. I think it would be an expansion of Warner-Lambert to suggest that the Court held in that case that each description within the explanatory notes individually viewed alone would be sufficient to qualify a product for oral hygiene, oral or dental hygiene. Warner-Lambert focused on that. But we're going to now start analyzing breath mints for the degree of what. Some breath mints are good and some breath mints are not good for oral hygiene. And what will be the distinguishing characteristic in your mind? In my mind, it would be whether it neutralizes chemicals in your mouth like the certs did or whether it inhibits bacteria. Because the other two things that this Court found can affect oral hygiene. Masking and purging are applicable to everything, to many, many things that are far outside the scope of this case. You're saying, picking up on your discussion a little bit with Judge Rader, he was talking earlier about how often things cause salivation and that's a purging. You're saying if you had an oral perfume, something that made your breath smell nicer, and it also caused salivation, you would say it would be your position that that in itself was not enough. That's called a candy mint that you get at Outback Steakhouse after you eat a steak. It causes salivation, it causes purging. That, those two alone, cannot be enough. What about, say, an Altoid? Altoids are, in my understanding of them, almost all sugar. And they are perfumed. No, that isn't enough. And the whole point of this is that candy cannot be a dental or hygiene product. And if you want to look at a... Why does perfume have to have... The note says oral perfumes, which heads us down this road at least a ways. We know it's not binding, but it certainly places us in this position. Why is oral perfume, by definition, cleansing, have to be cleansing? Because the tariff which it is describing is for preparations for oral or dental hygiene. So the definition of something... Why isn't it good hygiene to smell good rather than to smell bad? So then you have to turn to what exactly is hygiene. And this court's defined it... Well, and the court did say it's not just a broad definition of health. Right. It says it's... you were not talking just about health. Right. We were talking about cleanliness. It seems to say that, well, but am I clean if I smell better? It is our position that cleanliness is actually something more than making spray... Except the court said it doesn't have to have antimicrobial. Yes. It doesn't have to kill any germs. Yes. So I'm wondering why Judge Schall isn't right that my hygiene's better if I just put on the perfume, even though I haven't taken a shower. Because it must clean. And making something smell better to your mouth is not cleaning. That is just putting an aroma that humans find better in the air. In certs, the court said, no, it doesn't have to kill bacteria, but it must do something. And in that court, it looked to the fact that it reacted with the sulfides in your mouth. Let me ask you, it's a hypothetical. Assume for the moment you had a tariff classification that was solely oral perfumes. There wasn't anything else. Sort of taking the hygiene and the health factors out of it. Would you say that the Magic Strips would fall within that classification? Assuming you define oral perfumes as something that scents the mouth, it might well. Okay. In other words, makes the mouth smell better. Right. But again, it's not a term in the U.S., and there's no evidence of its meaning. And there's certainly no evidence that it can expand a headache. By the way, the heading specifically includes denture fixatives. Yes. What do they do to cleanse? I understand they're for dental hygiene. I understand they connect your… They just hold your teeth in place, your false teeth in place, right? Yes. But those have nothing to do with cleansing or health. I don't know. They are more cosmetic. I do not know. It is oral perfume. I don't know. They may well have something in them to ensure that germs don't grow when the dentures are attached. I'm sorry. I didn't become familiar with that. But it may well have something in it that keeps your mouth clean. I wanted to turn to the second issue here, which is whether the trial court properly granted summary judgment. There's a suggestion here of weighing of evidence. There was no weighing because there were certain facts that were not proven by the plaintiff, and there's not a drop of evidence on them. But aren't there some… Don't the declarations refer to various publications and some patents? I remember I was on the Warner-Lambert case with Judge Rader and Judge Bryson, and I remember reading the patent in that case. And it's rich with the art of malodour and what things cause bad breath and so forth. So what I'm saying is by referencing these various publications, I think the declarations here go beyond being just sort of conclusory statements. That's a roundabout way of saying that. Let's assume that's true. Here's what not one shred of evidence from the plaintiff proves. One, that menthol, and because these all really go towards where menthol can kill bacteria, can menthol kill germs in the mouth, that the type of germs that are in the mouth, in the form that's contained here in a magic strip, for the amount of time that magic strip's in your mouth, there's not a shred of evidence on any of those points. The evidence suggests at best that menthol may kill some germs. But doesn't the evidence maybe suggest, and it may or may not, but can't one make the argument that the evidence that is referenced in those publications and patents may be enough to meet the requirements as set forth in Warner-Lambert? Absolutely not, because in Warner-Lambert there was evidence that that product killed germs in the mouth for the amount of time that it was there. In this case, nothing in any affidavit tells you this product contains enough menthol to kill germs in your mouth while it's in your mouth. In fact, the only evidence on point is directly to the opposite, which is our expert's declaration in paragraph 6, where he says menthol in that amount can only be used for flavoring. So this isn't a weighing or a suggestion that the judge decided we were more convincing than them. There is no evidence. There's not any evidence on those critical points. Had they had a declaration that covered any of that, this would be a completely different argument. But they don't, and that's why summary judgment was proper for the government. I think my time is up. Okay, thank you, Ms. Williams. Director, you can have your full five minutes. Thank you, Your Honor. Your Honor, counsel began by admitting that Magic Strips mask oral malodors. As far as we're concerned, that ends the issue. They mask oral malodors. They are classifiable under Heading 3306. The government admits it. The case law supports it. Another supporting factor recognized in Warner-Lambert was the fact that the document that was much in discussion in Warner-Lambert was an FDA monograph that Customs had said requires antibacterial, bactericidal effects for hygiene. The court pointed out, and the monograph states, that odoriferous cosmetic preparations are considered to be hygienic preparations. That's what we have here. That's what an oral perfume is. It's an odoriferous cosmetic preparation. When I asked Ms. Williams what is the distinction between the certs in Warner-Lambert, in this case she said Retsin. Do you have something which performs the function that evidently Retsin does? Yes, Your Honor. How would you bring yourself into the same category as the certs meant in Warner-Lambert? The direct answer to your question, Your Honor, is yes, we do have qualities that would make us perform the purging and the cleansing function. The indirect answer, and I'll expand on both, is that the court didn't hold that it has to have Retsin, and that's what the government is attempting to do. Before Warner-Lambert, the bar for entry into 33-06 was up here. You had to have antibacterial elements. You had to kill bacteria actively. After Warner-Lambert, we would argue that the bar was lowered quite a bit, that the bar became oral perfumes and anything that makes the breath smell better. The government and the CIT has obliged them, has attempted to bring the bar back up to here where you've got antibacterial and then Retsin. They've created a subcategory for only products that have Retsin in it, and that, we would argue, Your Honor, was not the holding. The holding was that you don't have to have products that actively kill or cleanse bacteria, that you can have products that mask the bad breath. There are bad breaths that aren't caused by bacteria. Garlic. The only way to get rid of garlic breath is to fully digest the garlic. While you still have the garlic in your system, your breath will smell. The only way to mask or to be clean in that situation is to mask the bad breath. Let me ask you, there are three possibilities as a result in this case. Number one is to obviously affirm the decision of the Court of International Trade. A second possibility, theoretical possibility, is to reverse the decision and say summary judgment should be entered in your favor. It seems to me that in order to do that, one has to reach two conclusions. One, that being a perfume is enough, and two, that magic strips are perfume. There's no fact about that, right? Don't you have to arrive at those two conclusions in order to say that summary judgment should have been entered in your favor? There's a second possibility, third possibility, Your Honor. Yes, sending it back. Sending it back, and the Court could conclude that the salivary function of magic strips, if the Court were to conclude that purging is required. It seems to me that on the summary judgment record we have before us, the only way you can flat out win is if one were to determine that being an oral perfume is enough. That would be one way for us to flat out win. We would contend that the other way for us to flat out win would be that the government's expert states that the placement of anything in the mouth creates salivation. This goes in the mouth, it creates salivation. If the issue is cleansing and purging, we meet that standard. You'd say you'd win if you conclude that perfume plus salivation is enough. Or, either or. If perfume is enough, we would win. If salivation is enough, we would win. That would be our contention. Your Honor, Ms. Williams stated that one of the debates that the Court had with Ms. Williams was what would distinguish between candies and these myths? And the simple answer is sure. There are headings for candies with sugar, there are headings for gums with sugar, and if the sugar, if the product isn't properly classifiable under one of those headings because it meets another, that would be a different issue. But that isn't here today. We didn't meet the candy. No one contests that this is a candy. No one suggests that this is a candy. It's not classifiable as a candy, so then where does it fit as an oral perfume? A brief summary, Your Honor. My final statement, Your Honor, would be that if the concern is whether more than just this product fit into multiple headings, if this is going to open up confusion, the tariff schedule deals with that. It has rules for deciding when there's overlap. There's naturally overlap. I've run over my time. Thank you, Mr. Richter.